UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. |
| | ) |
| | ) Violation: |
| v. | ) |
| | ) Count One: Conspiracy to Commit Mail |
| MARK HAUSER, | ) Fraud and Honest Services Mail Fraud |
| | ) (18 U.S.C. § 1349) |
| Defendant | ) |

## INFORMATION

At all times relevant to this Information:

### General Allegations

1.      Defendant MARK HAUSER ("HAUSER") was a resident of Cincinnatti, Ohio.

2.      The Edge College & Career Network, LLC, also known as "The Key," was a for-profit college counseling and preparation business based in Newport Beach, California that was established in or about 2007 and registered in California in or about 2012.

3.      The Key Worldwide Foundation ("KWF") was a non-profit corporation founded in or about 2012 and based in Newport Beach, California.   In or about 2013, the Internal Revenue Service ("IRS") approved KWF as an exempt organization under Section 501(c)(3) of the Internal Revenue Code, meaning that KWF was exempt from paying federal income tax, and that individuals who contributed to KWF could deduct those contributions from their taxable income, subject to certain limitations.

4.      ACT, Inc. was a non-profit organization headquartered in Iowa City, Iowa that administered the ACT, a standardized test that is widely used as part of the college admissions process in the United States.

5.      The College Board was a non-profit organization headquartered in New York, New York. Together with Educational Testing Service ("ETS"), a non-profit organization headquartered in Lawrence Township, New Jersey, the College Board developed and administered the SAT, a standardized test that, like the ACT, is widely used as part of the college admissions process in the United States. The College Board and ETS (collectively "the College Board") also developed and administered SAT subject tests, which are also used as part of the college admissions process.

6.      William "Rick" Singer was a resident, variously, of Sacramento and Newport Beach, California. Singer founded and, together with others, operated The Key and KWF.

7.      Mark Riddell was a resident of Palmetto, Florida.  Riddell was employed at relevant times as the director of college entrance exam preparation at a private college preparatory school and sports academy in Bradenton, Florida.

8.      Igor Dvorskiy was a resident of Sherman Oaks, California. Dvorskiy was employed as the director of a private elementary and high school located in West Hollywood, California (the "West Hollywood Test Center"). Dvorskiy also served as a compensated standardized test administrator for ACT, Inc. and the College Board.

9.      Niki Williams was a resident of Houston, Texas. Williams was employed as an assistant teacher at a public high school in Houston (the "Houston Test Center"). Williams also served as a compensated standardized test administrator for ACT, Inc. and the College Board.

10.     Martin Fox was a resident of Houston, Texas. Fox was employed as the president of a private tennis academy and camp in Houston.

General Background on Standardized Testing and the College Admissions Process

11.     Most selective colleges and universities in the United States require prospective students to submit standardized test scores—typically, either the ACT or the SAT—as part of their application packages. When submitted, standardized test scores are a material part of the admissions process.

12.     The ACT includes sections on English, mathematics, reading, and science, and is scored on a scale of 1 to 36.

13.     The SAT includes sections on writing, critical reading, and mathematics. Between 2005 and January 2016, the SAT was scored on a scale of 600 to 2400. As of March 2016, the SAT has been scored on a scale of 400 to 1600.

14.     The ACT and the SAT are typically administered to large groups of students on specified dates and under strict time limits. In some instances, however, students with certain learning or other disabilities may qualify for testing accommodations, including extended time, and, in such circumstances, may take the test alone, under the supervision of a test administrator retained by ACT, Inc. or the College Board.

15.     Compensated ACT and SAT administrators, like Dvorskiy and Williams, owe a duty of honest services to ACT, Inc. and/or the College Board.

16.     Prior to administering the ACT, test administrators must typically certify that they will administer the test in accordance with the ACT Administration Manual, and that they will ensure that the "test materials are kept secure and confidential, used for this examinee only, and returned to ACT immediately after testing."

17.     Similarly, prior to administering the SAT, test administrators must typically certify that they will administer the test in accordance with the SAT coordinator's manual, that the SAT

test is the property of the College Board, and that no one other than the student can "open the test book and see the test content."

18. The ACT tests are typically sent to and from the testing sites via Federal Express, a private, interstate commercial carrier.

19. The SAT tests are typically sent to and from the testing sites via United Parcel Service ("UPS"), a private, interstate commercial carrier.

20. The ACT and SAT tests, and the scores students earn on those tests, are the intellectual and physical property of ACT, Inc. and the College Board, respectively.

21. Many selective colleges and universities in the United States recruit students with demonstrated athletic abilities, and typically apply different criteria when evaluating applications from such students, with the expectation that recruited athletes will be contributing members of the universities' athletic teams once enrolled. Typically, the admissions offices at those universities allot a set number of admission slots to each head coach of a sport for that coach's recruited athletes. The admissions prospects of recruited athletes are higher—and in some cases substantially higher—than those of non-recruited athletes with similar grades and standardized test scores.

22. University athletic coaches and administrators owe a duty of honest services to the universities where they are employed.

23. Admissions slots, the determination of which students to admit, and the resulting composition of undergraduate classes are important assets of colleges and universities.

### The Conspiracy

24. From in or about 2007 through in or about February 2019, the defendant conspired with others known and unknown to the United States Attorney to use bribery and other forms of

fraud to facilitate the admission of applicants to selective colleges and universities in the District of Massachusetts and elsewhere.

Objects and Purposes of the Conspiracy

25.     The principal objects of the conspiracy were to commit mail fraud and honest services mail fraud, in violation of Title 18, United States Code, Sections 1341 and 1346. The principal purposes of the conspiracy included, among other things: (1) securing the admission of applicants to selective colleges and universities using fraudulently obtained test scores, bogus academic and athletic credentials, falsified applications, and bribes; (2) enriching Singer and the recipients of the bribes and other payments; and (3) concealing the fraud and honest services fraud scheme.

Manner and Means of the Conspiracy

26.     Among the manner and means by which the defendant and coconspirators known and unknown to the United States Attorney carried out the conspiracy were the following:

    a.  Seeking extended time for students on college entrance exams, including by having the students purport to have learning disabilities in order to obtain the medical documentation that ACT, Inc. and the College Board typically require before granting students extended time;

    b.  Changing the location of the exams to one of two test centers: the Houston Test Center or the West Hollywood Test Center;

    c.  Bribing college entrance exam administrators at the Houston Test Center and the West Hollywood Test Center to permit cheating, in violation of their duty of honest services to ACT and the College Board;

    d.  Paying Riddell or another third party to pose as an exam proctor or as a student taking the exam, so that he could secretly provide students with

answers during the exam, replace the students' exam responses with his
own, or take the exam in place of the students;

e.  Having a third party take classes in place of actual students, with the
    understanding that grades earned in those classes would be submitted as part
    of the students' college applications;

f.  Bribing athletic coaches and university administrators to designate students
    as purported athletic recruits—with little or no regard for their athletic
    abilities and, in some cases, even though they did not play the sport they
    were purportedly recruited to play—and as members of other favored
    admissions categories, in violation of the coaches' and administrators'
    duties of honest services to their employers;

g.  Fabricating athletic "profiles" containing falsified athletic credentials—
    including fake honors the students purportedly received, elite athletic teams
    they purportedly played on, and staged photographs of the students
    purportedly engaged in athletic activity—to submit in support of the
    students' college applications; and

h.  Submitting falsified applications for admission to colleges and universities
    in the District of Massachusetts and elsewhere that, among other things,
    included the fraudulently obtained standardized test scores and class grades,
    and often listed fake awards, athletic activities, and fabricated essays;

i.  Explaining to clients and prospective clients of The Key that these
    fraudulent schemes were tried-and-true methods of improving exam scores

and gaining admission to college that had been successfully employed by many other clients; and

j.   Concealing the fraud to prevent the scheme from being discovered, including by the universities and standardized testing entities.

<u>Acts in Furtherance of the Conspiracy</u>

27.   On various dates from in or about 2007 through in or about February 2019, the defendant and coconspirators known and unknown to the United States Attorney committed and caused to be committed the following acts, among others, in furtherance of the conspiracy:

28.   In or about the spring of 2016, HAUSER agreed to pay Singer an amount, ultimately totaling $40,000, to have Riddell pose as a proctor for HAUSER's daughter's ACT exam and secretly correct her answers.

29.   On or about April 7, 2016, HAUSER's daughter received an accommodation from the ACT to take the exam with "double time."   Notice of the accommodation was sent to Singer and HAUSER.   Singer explained to HAUSER that the exam would be given "over multiple days with 100 percent [extra] time."

30.   On or about April 7, 2016, after receiving an e-mail inquiring "when are where" HAUSER's daughter would take the ACT, Singer replied, copying HAUSER, that the ACT would be given in mid-June if the "folks helping can accommodate which I will check."

31.   On or about April 11, 2016, Singer emailed Fox asking if he could check to "see if a student can take June ACT in Houston who has 100 percent extended time?"   Fox responded, "I will check now."   Singer then relayed the news to HAUSER, telling them that he "[l]eft a message for the Houston folks."

32.    In or about early May 2016, HAUSER, Singer, and Williams took steps to move the location of HAUSER's daughter's ACT exam from her high school in Los Angeles, California to the Houston Test Center.

33.    On or about June 17, 2016, Riddell flew from Tampa, Florida to Houston, Texas to purport to proctor the ACT for HAUSER's daughter.

34.    On or about June 18, 2016, after HAUSER's daughter completed the ACT exam, Riddell reviewed and corrected her answers.

35.    Williams mailed the completed ACT exam to the ACT for scoring via private interstate commercial carrier.

36.    Riddell earned a total score of 31 out of a possible 36 for HAUSER's daughter.

37.    On or about June 20, 2016, Singer caused KWF to issue a payment of $25,000 to Fox, with the understanding that Fox, in turn, would pass part of the payment on to Williams for permitting the cheating to occur, in violation of her duty of honest services to ACT.

38.    On or about June 20, 2016, Singer caused KWF to issue a payment of $5,000 to Riddell.

39.    On or about July 1, 2016, Singer caused KWF to issue a second payment of $5,000 to Riddell.

40.    On or about August 11, 2016, HAUSER caused his company to mail a $40,000 check to The Key from Cincinnati, Ohio, in exchange for Singer facilitating the ACT cheating scheme for HAUSER's daughter.

41.    On or about November 21, 2016, the ACT score Riddell secretly obtained on behalf of HAUSER's daughter was submitted as part of her applications to various colleges and universities, including Boston College in the District of Massachusetts.

8

### Other Co-Conspirators

42.     Singer also bribed athletic coaches and university administrators on behalf of other co-conspirators known and unknown to the United States Attorney to designate the children of those co-conspirators as athletic recruits, and thereby to facilitate their admission to selective colleges and universities.

43.     Singer also paid Riddell to cheat on the SAT and ACT for the children of other co-conspirators known and unknown to the United States Attorney and, in many of those instances, bribed exam administrators Dvorskiy and Williams to permit Riddell to do so.

COUNT ONE
Conspiracy to Commit Mail Fraud
and Honest Services Mail Fraud
(18 U.S.C. § 1349)

The United States Attorney charges:

44.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-43 of this Information.

45.     In or about 2016, in the District of Massachusetts, and elsewhere, the defendant,

MARK HAUSER,

conspired with others known and unknown to the United States Attorney to commit mail fraud and honest services mail fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property, to wit, ACT and SAT tests and test scores, and admission to universities, by means of materially false and fraudulent pretenses, representations, and promises, and to defraud and deprive, variously, ACT, Inc., the College Board and the universities, of their right to the honest and faithful services of their test administrators, athletic coaches and university administrators, through bribes and kickbacks, to, for the purpose of executing and attempting to execute the scheme, deposit and cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, in violation of Title 18, United States Code, Sections 1341 and 1346.

All in violation of Title 18, United States Code, Section 1349.

ANDREW E. LELLING
UNITED STATES ATTORNEY

By:

ERIC S. ROSEN
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
Assistant United States Attorneys

Date: August 21, 2020