UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No.: 20-cr-10166-DPW |
| MARK HAUSER, | ) ) ) | |
| Defendant | ) ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government respectfully submits this memorandum in connection with the sentencing of defendant Mark Hauser.

Hauser, the founder of a private equity firm and chairman of an insurance agency, conspired with William "Rick" Singer and others to commit mail fraud and honest services mail fraud in connection with a scheme to procure an illicit advantage for his daughter over more deserving applicants in the college admissions process. As part of the scheme, Hauser agreed to pay Singer $40,000—disguised as a business consulting fee paid by Hauser's insurance company to Singer's company, The Edge College & Career Network, LLC ("The Key")—to induce Niki Williams, a standardized test administrator, to allow Mark Riddell to purport to proctor Hauser's daughter's ACT exam, and then to secretly correct her answers. Once the fraud was complete, Hauser negotiated a discount in return for referring other clients to Singer, and readily agreed to lie to cover up what he had done.

For his actions, Hauser should be sentenced to a term of imprisonment of two months, a $40,000 fine, and one year of supervised release with 250 hours of community service.

I.      **THE OFFENSE CONDUCT**

In April 2016, Hauser began using his daughter's testing accommodation as a pretext to switch her ACT exam to a test center Singer controlled. Pre-Sentence Report ("PSR") ¶¶ 45-50. On April 7, 2016, Singer told Hauser that his daughter's "double time" accommodation would allow her to take the ACT exam "over multiple days with 100 percent time."[1] PSR ¶ 45. The next day, Singer explained that Hauser's daughter's exam would be administered in mid-June if the "folks helping can accommodate which I will check." PSR ¶ 46. Three days later, Singer e-mailed Martin Fox, a middleman who helped arrange the exam cheating, asking if Fox could check to "see if a student can take June ACT in Houston who has 100 percent extended time?" PSR ¶ 47. The following day, after Hauser's daughter's high school indicated that she would need to take the ACT exam at the school within two weeks, Singer instructed Hauser to tell the school "that we were not feeling prepared and would like to move the test to June." PSR ¶ 48.

In May 2016, Hauser took steps to move the exam from his daughter's Los Angeles high school to Houston. PSR ¶¶ 49-50. On May 4, 2016, Hauser's spouse falsely told his daughter's high school that due to "conflicts with her camp counseling job this summer . . . it looks like we will not be in LA to take the ACT . . . and have found a school in Cincinnati that will accommodate her." PSR ¶ 49. Two days later, Singer e-mailed ACT, Inc. requesting confirmation that Hauser's daughter's "materials will be sent to Niki Williams" at the public school in Houston where Williams worked. PSR ¶ 50. Singer's e-mail attached a form that used Hauser's daughter's "double time" accommodation to request that ACT, Inc. change her exam location to Houston. Singer forwarded the e-mail and form to Hauser.

---

[1] Singer's scheme required students to obtain extended time on the exam, because that accommodation allowed students to select the exam location. PSR ¶ 33.

2

In June 2016, Singer's bookkeeper, Steve Masera, sent Hauser a $75,000 invoice from Singer's non-profit, the Key Worldwide Foundation ("KWF"), for a purported "Private Contribution." PSR ¶ 51. Masera added: "Mark, if you would like to go the Consulting route, just let me know and I will replace the attached invoice."

On June 18, 2016, Hauser took his daughter to the public school in Houston where Williams worked. PSR ¶ 52. That day, Hauser's daughter took the ACT exam on her own. PSR ¶ 43. Williams, in violation of ACT, Inc.'s policies and procedures and her duty of honest services to ACT, Inc., allowed Riddell to purport to proctor the exam, and, therefore, to correct the answers, thereby fraudulently ensuring that Hauser's daughter earned a score in the 95th percentile. PSR ¶¶ 43, 53-55, & n.4. Williams mailed the falsified exam to ACT, Inc., along with a report falsely indicating that the exam had been administered over three days. PSR ¶ 53.

Two days after the exam, Singer caused KWF to issue a payment of $25,000 to Fox, with the understanding that Fox would pass part of the payment on to Williams. PSR ¶ 55. Fox, in turn, paid Williams between $5,000 and $10,000 in cash. Singer also caused KWF to issue two payments of $5,000 each to Riddell.

In July 2016, Masera sent Hauser two falsified invoices on behalf of Singer's for-profit company, The Key. PSR ¶ 56. The first invoice was purportedly for "Business Consulting & Oversight Review – 2016" in the amount of $40,000. The second was purportedly for "Business Consulting & Oversight Review – 2017" in the amount of $35,000. In August 2016, Hauser caused his company to mail a $40,000 check to The Key, despite the fact that Singer had never performed any consulting work for Hauser's business. PSR ¶¶ 42 & 56. Singer subsequently agreed to accept this reduced amount as payment in full for the fraud, because Hauser introduced Singer to other clients, including co-conspirator Mossimo Giannulli. PSR ¶ 41 & n.3.

In November 2016, the fraudulent ACT score that Riddell obtained on behalf of Hauser's daughter was submitted as part of her applications to various colleges and universities, including Boston College. PSR ¶ 57.

In October 2018, Singer, at the direction of law enforcement agents, told Hauser that he was being audited by the Internal Revenue Service ("IRS"). PSR ¶ 58. The following is an excerpt from the call, which was consensually recorded:

> Singer: [S]o my foundation is now getting audited . . . and they asked about your payment, which was for [your daughter] taking the—for [your daughter] takin' the test that we took for her, in Houston. . . . And, of course, I'm not gonna say that, you know, essentially Mark Riddell took the test for [your daughter]. But then I said that your payment of 40K was to our foundation, to help underserved kids.
>
> Hauser: Well, of course it was. . . . What would be the question?
>
> Singer: Well, so I just wanted to let you know. I want to make sure that you and I are on the same page, in case they call you--
>
> Hauser: Yeah.
>
> Singer: So that our stor-- our stories are together. 'Cause my books show that your 40--
>
> Hauser: Well, like, uh – like I said, Rick, of course. . . . It couldn't be anything else. That's what it was. . . . I just wanted to help y-- I want to help you help the kids.

In fact, despite his embrace of Singer's cover-story, Hauser's payment had been disguised at his own direction as a consulting fee paid to Singer's for-profit company, and not as a purported donation to Singer's sham charity (as Masera had initially proposed). PSR ¶¶ 42, 51 56, & 59.

## II.     THE SENTENCING GUIDELINES

Hauser stands convicted of one count of conspiracy to commit mail fraud and honest services mail fraud. For the reasons articulated in prior briefs, the government respectfully submits that Hauser's Sentencing Guidelines should be calculated as follows:[2]

|  | Level | U.S.S.G. Section |
|---|---|---|
| **Base Offense Level** | 8 | 2B4.1 |
| **Bribe Amount** | +4 | 2B4.1(b)(1)(B) & 2B1.1(b)(1)(C) |
| **Acceptance of Responsibility** | -2 | 3E1.1(a) |
| **Total Offense Level** | 10 | |
| **Sentencing Guideline Range** | 6 to 12 months | |

The Probation Department takes a different approach, resulting in the following calculation:

|  | Level | U.S.S.G. Section |
|---|---|---|
| **Base Offense Level** | 7 | 2X1.1(a)(1) & 2B1.1(a)(1) |
| **Acceptance of Responsibility** | -2 | 3E1.1(a) |
| **Total Offense Level** | 5 | |
| **Sentencing Guideline Range** | 0 to 6 months | |

The Court has previously adopted the Probation Department's approach in connection with the sentencing of one of Hauser's co-conspirators.[3] *See United States v. Bizzack*, 19-cr-10222-DPW, Dkt. 34.

---

[2] The government has previously briefed these guideline issues in connection with the sentencings of Hauser's co-conspirators. *See, e.g., United States v. Abbott, et al.*, 19-cr-10117-IT, Dkt. 422; *United States v. Bizzack*, 19-cr-0222-DPW, Dkt. 25; *United States v. Macfarlane*, 19-cr-10131-NMG, Dkt. 334; *United States v. Dameris*, 20-10099-RGS, Dkt. 18.

[3] Judges Zobel, Talwani, Gorton, and Burroughs have likewise adopted the Probation Department's approach in related cases, while Judge Stearns has used the bribe payment as a proxy for loss. *Compare, e.g., United States v. Vandermoer*, 19-cr-10079-RWZ, Dkt. 26; *United States v. Abbott, et al.*, 19-cr-10117-IT, Dkt. 443; *United States v. Macfarlane*, 19-cr-10131-NMG, Dkt. 340; *United States v. Littlefair*, 19-cr-10463-ADB, Dkt. 35, *with United States v. Center*, 19-cr-10116-RGS, Dkt. 71; *United States v. Dameris*, 20-cr-10099-RGS, Dkt. 27.

### III. SENTENCING RECOMMENDATION

Hauser's criminal conduct warrants a meaningful term of incarceration. In light of the relevant Section 3553 factors, the government respectfully submits that a sentence of two months is "sufficient, but not greater than necessary," to satisfy the purposes of sentencing in this case.

#### A. Hauser's Active and Deliberate Participation in the Criminal Conduct

Hauser was an active participant in Singer's scheme. He submitted fraudulent paperwork to the ACT, Inc. that used his daughter's legitimate testing accommodation as a pretext to transfer her exam to a test center Singer controlled; was complicit in lies told to her high school about why she would take the exam thousand of miles away; negotiated a discount from Singer in exchange for referring additional clients (including Mossimo Giannulli who, together with his wife, Lori Loughlin, later engaged Singer in the college recruitment aspect of the scheme to facilitate the admission of their two daughters to the University of Southern California ("USC") as purported coxswain recruits); caused his insurance company to pay the $40,000 fee; and concealed that payment under the guise of a fake consulting agreement. In so doing, Hauser corrupted the administration of the ACT exam and effectively stole an exam score that he knew his daughter did not earn.

Hauser was undeterred by the wrongfulness of his conduct. Indeed, when Singer called to tell him that the IRS might be on to their scheme, he agreed without hesitation to adopt the false cover story that his payment was a "donation" to help underserved kids—a remarkable display of nonchalance about fraud by a financial executive in a heavily regulated industry.

#### B. Hauser's History and Characteristics

Hauser has no prior criminal history and was, until these charges, generally considered to be a successful businessman and a respected member of his community. Those facts render his

6

willing embrace of the fraud remarkable, but do not distinguish him from other parent-defendants who engaged in Singer's scheme. *See United States v. McGlashan*, 19-cr-10080-NMG, Dkt. 1838 (defendant sentenced to three-month term despite a life-long devotion to charitable causes); *United States v. Hodge*, 19-cr-10080-NMG, Dkt. 810 (defendant sentenced to nine-month prison term despite founding and supporting an orphanage in rural Cambodia amongst many other charitable endeavors); *United States v. Sloane*, 19-cr-10117-IT, Dkt. 454 (defendant sentenced to four-month prison term despite sponsoring the Italian Special Olympics team and working to bring water to parts of Central America).

### C. The Need for General Deterrence

Hauser's offense was born not of desperation but of privilege. Fueled by arrogance and entitlement, his actions demonstrate a stunning disregard for basic principles of fair play and common decency. Like other parent defendants charged in the college admissions scheme, he corrupted a system already greatly skewed in favor of his children, and caused real harm, including by contributing to a lack of trust in the system itself.

Neither probation nor a criminal fine would constitute a sufficient penalty under these circumstances. While all parents want the best for their children, a meaningful sentence of incarceration will deter those, like Hauser, who lack the moral compass to stop short of breaking the law to achieve that outcome, and will send a clear message that everyone is accountable to the law, regardless of wealth or status. *See United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (recognizing "the critical deterrent value of imprisoning serious white-collar criminals, even where those criminals might themselves be unlikely to commit another offense"). Principles of general deterrence are particularly important where, as here, the criminal conduct is "rational, cool,

and calculated," and more difficult to detect than a "sudden crime[] of passion or opportunity." *Id.* (citation and quotation marks omitted).

### D. A Two-Month Term is Comparable to the Sentences of Other Defendants

Other parent defendants who engaged in the exam cheating aspect of Singer's scheme have received sentences ranging between probation and seven months in prison—with an average term of imprisonment of approximately two and a half months.[4] Hauser was more actively involved in the scheme than some—as demonstrated by his effort to conceal his payment as a consulting fee and have it paid by his insurance company, as well as his referral of clients to Singer in exchange for a discount—but he is also less culpable than others who engaged in the scheme repeatedly, or who allowed their children to become complicit in it.

A sentence of two months' imprisonment is comparable to sentences imposed on similarly situated defendants, as the following examples make clear:

- Defendant William McGlashan Jr. was sentenced to three months in prison after agreeing to pay $50,000 to facilitate exam cheating on behalf of his son. Like Hauser, McGlashan was an active participant in the scheme who helped Singer move his son's exam to a testing site Singer controlled and then accompanied him to the exam. Unlike Hauser, McGlashan did not refer other clients to Singer, but he did agree to participate in the college recruitment aspect of the scheme, before cutting short his involvement after Singer tipped him to the government's investigation.

- Defendant David Sidoo was sentenced to three months in prison after agreeing to pay $200,000 to facilitate exam cheating multiple times on behalf of his two sons. Like Hauser, Sidoo was an active participant in the

---

[4] The only parent defendant not sentenced to a term of imprisonment in this scheme, Peter Jan Sartorio, was less culpable than Hauser. *See United States v. Sartorio*, 19-cr-10117-IT, Dkt. 548 at 14. As the Court noted, Sartorio was the only parent defendant who did not try to convince himself or others "that what he was doing was legitimate," and, after his arrest, he was "faster to recognize . . . and admit[] his crime[.]" *Id*. at 30-31. Likewise, the parent sentenced to seven months of incarnation, Elizabeth Henriquez, was significantly more culpable than Hauser—having actively participated in exam cheating five times on behalf of two daughters as well as the college recruitment aspect of the scheme once. *See United States v. Colburn, et al.*, 19-cr-10080-NMG, Dkt. 548 at 10-13.

8

       scheme who helped organize the documentation Singer needed for Riddell to take the exam in place of his children. Unlike Hauser, however, Sidoo was a repeat offender who engaged in the exam cheating twice. Sidoo, who is not a U.S. citizen, served his sentence at a minimum-security prison, while Hauser will likely serve any term of incarceration at a federal prison camp.

- Defendant Robert Flaxman was sentenced to one month in prison after agreeing to pay $75,000 to facilitate cheating on his daughter's college entrance exam. Like Hauser, Flaxman used his business to pay for the cheating. In contrast to Hauser, however, Flaxman was a more passive participant in the scheme, who, after directing Singer to put it in motion, was principally responsible simply for making the required payment. In addition, unlike Hauser, Flaxman promptly met with law enforcement agents to tell them what he knew about the scheme.[5]

- Defendant Agustin Huneeus was sentenced to five months in prison after agreeing to pay $300,000 to facilitate his daughter's admission to USC as a fake water polo recruit and using Singer to cheat on her college entrance exam.[6] Huneeus and Hauser were both active participants in the scheme who agreed to use their daughters' test accommodations to move exams to a site Singer controlled. Unlike Hauser, however, Huneeus also participated in the college recruitment aspect of the scheme, made his daughter complicit in the scheme by directing her to write a false e-mail to USC about being a college-level athlete, and proposed using a second child to facilitate the exam cheating scheme.

---

[5] Flaxman's conduct, at least with respect to the credit warranted for his acceptance of responsibility, is akin to that of Jeffery Bizzack, who this Court sentenced to a term of imprisonment of two months for engaging in the college recruitment aspect of the scheme. At his sentencing, this Court imposed a "substantially diminished" period of imprisonment, because, after his co-conspirators were charged, Bizzack self-reported to the government and voluntarily spoke with investigators. *See Bizzack*, 19-cr-10222-DPW, Dkt. 34 at 105. As the Court explained: "if somebody stands up, tells the story, doesn't get substantial assistance, gets a form of acceptance of responsibility, I think about it not in the guidelines way but in a way of saying to other people, 'You get caught, talk. Tell the truth, because it's going to be better.'" *Id*. at 107. Here, in contrast, Hauser did not self-report to the government, nor did he speak to investigators about his crime.

[6] Huneeus's sentence was subsequently reduced to time served (approximately 4.5 months) pursuant to 18 U.S.C. § 3582(a)(1)(A).

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of two months' imprisonment, a $40,000 fine, and one year of supervised release with 250 hours of community service.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:  /s/ Justin D. O'Connell
JUSTIN D. O'CONNELL
LESLIE A. WRIGHT
KRISTEN A. KEARNEY
KARIN M. BELL
STEPHEN E. FRANK
Assistant United States Attorneys

Date: May 20, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by CM/ECF on May 20, 2021.

/s/ Justin D. O'Connell
JUSTIN D. O'CONNELL